**Dilipkumar C. PATEL, M.D., Plaintiff–Appellant,**

v.

**AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, INC., Defendant–Appellee.**

No. 92–1163.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 5, 1992.

Decided Sept. 23, 1992.

---

Mary Reitmeyer (argued), Richard M. Guerard, Pittsburgh, Pa., for plaintiff-appellant.

David J. Armstrong, Steven B. Larchuk, Dickie, McCamey & Chilcote, Pittsburgh, Pa., Ronald Betman, Roibin J. Ryan (argued), James W. Rankin, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before POSNER and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

To be board-certified by the American Board of Psychiatry and Neurology, a physician must have a year of internship after graduation from medical school and three years of residency, also postgraduate. At the time relevant to this case, the Board allowed the internship to be done abroad. Dr. Patel wrote the Board requesting credit for his Indian internship and attaching to the letter documents showing that it had been completed by May 1979 and that he had not received his medical degree until December. Nevertheless the Board wrote him back that his Indian internship would satisfy the internship requirement for certification by the Board. He later obtained a residency in the United States, in the third year of which he wrote the Board for confirmation that his Indian internship indeed qualified. The Board replied in the negative, so Patel was compelled, after completing his three years of residency, to do a year of internship, after which the Board certified him.

He brought this diversity suit against the Board, charging breach of contract and promissory estoppel, and seeking damages presumably based on the earnings he lost as a result of the postponement of his certification. The judge granted the Board summary judgment on the contract count but allowed the promissory estoppel count to go to trial. After a bench trial, the judge gave judgment for the Board on the ground that Patel's reliance on the Board's

initial letter had been unreasonable. Patel appeals only from the summary judgment on the contract count.

The judge held that any contract to waive the requirement of a post-graduate internship was unenforceable because not supported by consideration. He was right. An enforceable contract, in Anglo–American common law, is an exchange. American Law Institute, *Restatement (Second) of Contracts* § 17 (1979); 1 E. Allan Farnsworth, *Farnsworth on Contracts* §§ 2.2–2.4 (1990). There was no exchange here. Patel's lawyer is misled by the (legal) dictionary definition of consideration as benefit to the promisor (the Board) or detriment to the promisee (Patel), 3 Samuel Williston, *A Treatise on the Law of Contracts* § 7:5, at pp. 54–55 (4th ed., Richard A. Lord ed. 1992) (for criticism of the definition, see 1 Arthur C. Corbin, *Contracts* §§ 121–124 (1963)), as if Patel could have made the Board's assurance that he had satisfied the internship requirement binding by beating his head against the wall. He incurred a detriment in the sense of a cost by (as he argues) submitting documentation in support of his application for credit for his Indian internship. But the detriment was not part of a bargain. It's not as if the Board had told Patel that if he sat for some exam or gave up his Indian citizenship the Board would credit his pregraduation internship. Unbargained detriments are relevant not to contract but to estoppel.

Patel does not strengthen his case by arguing that the Board's letter stating that his Indian internship would be credited was the offer of a unilateral contract that he accepted by completing a three-year post-graduate residency in the United States. The only difference between a bilateral and a unilateral contract is that in the second the offeror waives formal acceptance; it is enough that the offeree performs as specified in the offer; performance and acceptance merge. But the performance must satisfy the requirement of consideration, since there is nothing else (i.e., the offeree's promise—he makes no promise) that might do so. The performance could confer a palpable benefit on the offeror—as where the offer is of a reward for returning the offeror's lost Siamese cat. Or it could impose a detriment on the offeree, as where the specified performance is to refrain from smoking. It is true that in every contract case, if we are right that contract is the domain of exchange, the promisee's detriment must *really* be a form of benefit—it is something the offeror wants and is willing to pay for. 3 Williston, *supra,* § 7:5, at p. 61. But sometimes the element of benefit is so oblique that it seems more natural to focus on the burden placed on the offeree, as in the smoking case. It might be better to speak of direct and indirect benefit, to make clear that the offeree is obligated at the least to do something that the offeror wants him to do even if the requested performance will not confer a palpable, an obvious benefit on the offeror.

But in the case at hand, when the contract is recast as a unilateral contract something altogether fundamental in such a contract is seen to be missing: requested performance. 1 Farnsworth, *supra,* § 2.9, at p. 61. When the Board told Dr. Patel that his Indian internship satisfied the Board's requirement of an internship, it didn't ask him to do anything, or for that matter to refrain from anything. *Id.* It told him that he didn't have to do (or for that matter not do) anything. It may have misled him, but a misleading statement is not *ipso facto* the offer of a unilateral contract.

AFFIRMED.